**UNITED STATES MAGISTRATE JUDGE**
**U.S. DISTRICT COURT BUILDING**
**WASHINGTON, D.C.**

PLEASE ISSUE:     [   ] Arrest     [ X ]  Search        [   ]  Seizure

Warrant for:          IN THE MATTER OF THE SEARCH OF
THE MONITORING OF GLOBAL POSITIONING SYSTEM
INFORMATION AND CELL SITE LOCATION DATA FOR ONE
VERIZON WIRELESS CELL PHONE AND SEARCH OF
INFORMATION ASSOCIATED WITH THE SAME NUMBER IN
VIOLATION OF 18 U.S.C. § 1752(A)(1) AND (2)

Violation:     [   ] D.C.C.          [ X ] U.S.C.        [   ] C.F.R.   Title: 18

Section(s):    Title 18 U.S.C. § 1752(a)(1) and (2), 40 U.S.C. § 5104(e)(2)(D) and (G)

Date:          January 27, 2021

D.D.C. Case No. (if already obtained):

AUSA:          Brenda J. Johnson
Assistant United States Attorney

Phone:         (202) 252-7801

COMPLETE FOR ALL WARRANTS:

*The following information must be provided for ALL warrants.*

Officer / Agent Name:        Isaac McPheeters

Badge/Agent Number:          27084

Agency / Unit:               FBI Kansas City - Springfield RA

Officer/Agent's 24 Hour Telephone Number (*i.e.*, cell number):     816-591-0224

Officer/Agent's Email:           iamcpheeters@fbi.gov

AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of Columbia

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*
THE MONITORING OF GLOBAL POSITIONING SYSTEM INFORMATION
AND CELL SITE LOCATION DATA FOR ONE VERIZON WIRELESS CELL
PHONE AND SEARCH OF INFORMATION ASSOCIATED WITH THE
SAME NUMBER IN VIOLATION OF 18 U.S.C. § 1752(a)(1) AND (2)

)
)
)
)
)
)
)

Case No. 21-SC-308

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A incorporated herein and included as part of the Affidavit in Support of this Application for a Search Warrant

located in the _____ District of _____New Jersey_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B incorporated herein and included as part of the Affidavit in Support of this Application for a Search Warrant

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1752(a)(1) and (2) | Entering or remaining in any restricted building or grounds, or impeding or disrupting the orderly conduct of Government business; |
| 40 U.S.C. § 5104(e)(2)(D) and (G) | Engaging in disorderly or disruptive conduct on Capitol Grounds and Building with intent to impede, disrupt, and disturb the orderly conduct of a session, hearing, and deliberation of Congress, and parading, demonstrating, and picketing in any Capitol building |

The application is based on these facts:

See attached Affidavit

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

Isaac McPheeters, Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means).*

Date:  _____01/27/2021_____

_____
*Judge's signature*

City and state:  ___Washington, D.C.___

G. Michael Harvey, U.S. Magistrate Judge
_____
*Printed name and title*

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means          ☐ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>THE MONITORING OF GLOBAL POSITIONING SYSTEM INFORMATION<br>AND CELL SITE LOCATION DATA FOR ONE VERIZON WIRELESS CELL<br>PHONE AND SEARCH OF INFORMATION ASSOCIATED WITH THE<br>SAME NUMBER IN VIOLATION OF 18 U.S.C. § 1752(a)(1) AND (2) | )<br>)<br>)<br>)<br>)<br>)          Case No.  21-SC-308 |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____New Jersey_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A incorporated herein and included as part of the Affidavit in Support of this Application for a Search Warrant

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B incorporated herein and included as part of the Affidavit in Support of this Application for a Search Warrant

**YOU ARE COMMANDED** to execute this warrant on or before _____February 05, 2021_____   *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____G. Michael Harvey, U.S. Magistrate Judge_____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:  _____01/27/2021_____                _____
                                                                                        *Judge's signature*

City and state:  _____Washington, D.C._____                _____G. Michael Harvey, U.S. Magistrate Judge_____
                                                                                        *Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>  21-SC-308 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

## Certification

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A-1

### Property to Be Searched

1.      This warrant applies to records and information associated with the cellular device ("TARGET PHONE") assigned to call number 417-689-4394 ("TARGET PHONE NUMBER"), owned by ZACHARY HAYES MARTIN, whose service provider is Verizon Wireless ("PROVIDER"), a wireless communications service provider that is located at 180 Washington Valley Road, Bedminster, New Jersey 07921.

2.      Information about the location of the TARGET PHONE that is within the possession, custody, or control of PROVIDER, including information about the location of the TARGET PHONE if it is subsequently assigned a different number.

**ATTACHMENT A-2**

1.      The subject of this investigation is ZACHARY HAYES MARTIN.

## ATTACHMENT B-1

### I.     Information to Be Disclosed by Provider

All information about the location of the TARGET PHONE assigned to TARGET PHONE NUMBER described in Attachment A-1 for a period of 30 days, during all times day or night. "Information about the location of the TARGET PHONE" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A-1.  It further includes:

- Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

- Source and destination telephone numbers;

- Date, time, and duration of communication; and

- All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the TARGET PHONE will connect at the beginning and end of each communication, as well as per-call measurements data (also known as PCMD, RTT, NELOSE, TrueCall or similar).

It also includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C § 3123 by the service provider and the Federal Bureau of Investigation.  The pen register / trap and trace device shall be transferable to any change dialed number subsequently assigned to a device bearing the same ESN, IMSI or SIM as the TARGET PHONE; any changed ESN, IMSI or SIM subsequently assigned the same dialed number as the

TARGET PHONE; or any additional changed dialed number, ESN, IMSI or SIM listed to the same subscriber account as the TARGET PHONE.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of PROVIDER, PROVIDER is required to disclose the Location Information to the government.  In addition, PROVIDER must furnish the government all information, facility, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with PROVIDER's services, including by initiating a signal to determine the location of the TARGET PHONE on PROVIDER's network or with such other reference points as may be reasonably available and at such intervals and times directed by the government.  The government shall compensate PROVIDER for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).

## II.    Government procedures for warrant execution

The United States government will conduct a search of the information produced by the PROVIDER and determine which information is within the scope of the information to be seized specified in Section I. That information that is within the scope of Section I may be copied and retained by the United States.

Law enforcement personnel will then seal any information from the PROVIDER that does not fall within the scope of Section I and will not further review the information absent an

4

order of the Court. Such sealed information may include retaining a digital copy of all

information received pursuant to the warrant to be used for authentication at trial, as needed.

**Attachment B-2**

**Particular Things to be Seized**

I.     **Government procedures for warrant execution**

To the extent that the information described in Attachment A-1 is within the possession, custody, or control of the PROVIDER, including any information that has been deleted but is still available to the PROVIDER or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the PROVIDER is required to disclose to the government the following information pertaining to the Account/TARGET PHONE NUMBER listed in Attachment A-1:

a.  The following information about the customers or subscribers associated with the TARGET PHONE NUMBER/Account for the time period December 1, 2020 through the present.

    i.  Names (including subscriber names, user names, and screen names);

    ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    iii.  Local and long distance telephone connection records;

    iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

    v.  Length of service (including start date) and types of service utilized;

    vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

    vii.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

   viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records, and

    ix.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the TARGET PHONE NUMBER/Account, including:

        A.  the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

        B.  information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

        C.  all available per-call measurement data and RTT reports, to include 1X, EVDO, LTE, IP session, and Data.

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 18 U.S.C. § 1752(a)(1) and (2) and/or 40 U.S.C. § 5104(e)(2)(D) and (G) involving ZACHARY HAYES MARTIN during the period December 1, 2020 through the present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the PROVIDER in order to locate the things particularly described in this Warrant.

Law enforcement personnel will then seal any information from the PROVIDER that does not fall within the scope of Section I and will not further review the information absent an

order of the Court. Such sealed information may include retaining a digital copy of all

information received pursuant to the warrant to be used for authentication at trial, as needed.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed by Verizon Wireless, and my title is _____.  I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved.  I state that the records attached hereto are true duplicates of the original records in the custody of Verizon Wireless.  The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**.  I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Verizon Wireless, and they were made by Verizon Wireless as a regular practice; and

b.      such records were generated by Verizon Wireless's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Verizon Wireless, in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by Verizon Wireless, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____        _____

Date                                                     Signature

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF THE MONITORING OF GLOBAL POSITIONING SYSTEM INFORMATION AND CELL SITE LOCATION DATA FOR ONE VERIZON WIRELESS CELL PHONE AND SEARCH OF INFORMATION ASSOCIATED WITH THE SAME NUMBER IN VIOLATION OF 18 U.S.C. § 1752(a)(1) AND (2)** | Case No. 21-SC-308<br><br> Filed Under <u>Seal</u> |

*Reference:*       *USAO Ref. # 2021R00439; Subject Account: 417-689-4394*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Isaac McPheeters, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant under

Federal Rule of Criminal Procedure 41, 18 U.S.C. §§ 2703(a), and 2703(c)(1)(A), and former

Chief Judge Hogan's Memorandum Opinion in In the Matter of the Application of the United

States for an Order Authorizing the Monitoring of Geolocation and Cell Site Data for a Sprint

Spectrum Cell Phone Number ESN, 2006 WL 6217584 at *4 (D.D.C. 2006) (Hogan, C.J.)

("Hogan Opinion"), for information about 1) the prospective location of the cellular device

("TARGET PHONE") assigned call number 417-689-4394 ("TARGET PHONE NUMBER"), as

detailed in Attachment B-1; and 2) historic location data for the TARGET PHONE NUMBER,

as detailed in Attachment B-2[1], whose service provider is Verizon Wireless ("PROVIDER"), a

---

[1] Upon receipt of the information described in Section I of Attachment B-2, government-authorized persons will review the information to locate items described in Section II of Attachment B-2.

wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey 07921. As a provider of wireless communications service, PROVIDER is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15).

2.      Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. See 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. See 18 U.S.C. § 3123(b)(1). A certification by Assistant U.S. Attorney Brenda Johnson, an attorney for the government, that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the Federal Bureau of Investigation (FBI), is included on the signature page of this affidavit.

3.      I am "an investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. Specifically, I am a Special Agent with the FBI and have been so employed since January 2017. I have been assigned to the Kansas City Division since June 2017. During my time at the FBI, I have been trained on investigative methods regarding social media accounts and the evidence they may contain on criminal activity. Since May 2019, I have been assigned to investigate terrorism threats and violations, to include online threatening communications. I have attended training conducted by the FBI on the investigation of terrorism threats. I have gained expertise in conducting such investigations through training in seminars, classes, and everyday work related to these types of investigations.

2

4.      I base the facts set forth in this affidavit upon my personal knowledge, information obtained during my participation in this investigation, review of documents to include business and bank records and official government records, knowledge obtained from other individuals including law enforcement personnel, and communications with others who have personal knowledge of the events and circumstances described herein.  Because this affidavit is being submitted for the limited purpose of enabling this Court to make a judicial determination of probable cause to issue a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish the legal basis for the issuance of a search warrant.

5.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1752(a)(1) and (2) and/or 40 U.S.C. § 5104(e)(2)(D) and (G)  have been committed by ZACHARY HAYES MARTIN (MARTIN).  There is also probable cause to believe that the historical location information, as described in Attachment B-2, and that the prospective location information, as described in Attachment B-1, will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses or evidence of the commission of these offenses.   Moreover, the prospective location information described in Attachment B-1 will provide evidence of where the phone is currently located, and there is probable cause to believe the phone is an instrumentality of the offenses described herein.

6.      MARTIN was charged with the above-referenced crimes on and was the subject of an arrest warrant issued out of this District on January 21, 2021.  There is also probable cause to believe that the location information described in Attachment B will assist law enforcement in

arresting MARTIN, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

7.      The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated; *see* 18 U.S.C. § 2711(3)(A)(i).  As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, DC.  *See* 18 U.S.C. § 3237.

## PROBABLE CAUSE

### *Background: Events at the U.S. Capitol on January 6, 2021*

8.      The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the Capitol. On January 6, 2021, the exterior plaza of the Capitol was also closed to members of the public.

9.      On January 6, 2021, a joint session of the U.S. Congress convened at the U.S. Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the U.S. House of Representatives and the U.S. Senate were meeting in separate chambers of the Capitol to tabulate the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m.  Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection.  Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

10.     As the proceedings continued in both the U.S. House of Representatives and the U.S. Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

11.     At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

12.     Shortly thereafter, at approximately 2:20 p.m., members of the U.S. House of Representatives and U.S. Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the U.S. Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the U.S. Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

13.     During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

### *Facts Specific to This Application*

14.     The FBI became aware of the involvement of MARTIN after a tip was submitted by W-1 of Springfield, Missouri. W-1 indicated that he/she had observed public posts on Facebook discussing that MARTIN was present at the U.S. Capitol during the riot and had "livestreamed" a video of himself in the U.S. Capitol Building on Facebook. Based on my training and experience, I am aware that Facebook is an online social media platform accessible from both mobile devices and computers. I am also aware that Facebook is used by individuals around the world to post information and share content (including text, pictures, and video files, among other information) with "friends" (i.e., Facebook users that the accountholder has accepted as a member of the accountholder's network) and/or the public. I am also aware that Facebook accountholders can "livestream" video content on Facebook, meaning that they can upload and display video content to other Facebook users in real-time, can save this content for future viewing by Facebook users, and can choose who may view these videos (e.g., the accountholder can make the video "public" to all Facebook users or can limit the video so it is only visible to certain Facebook users). W-1 subsequently provided the FBI with screenshots she had observed circulating on Facebook, including screenshots that appear to be from MARTIN's livestream video (*see* Images 1 and 2, below).

**Image 1**                    **Image 2**



15.     The FBI subsequently interviewed W-2, who indicated that he/she had met MARTIN in person and is friends with MARTIN on Facebook. W-2 stated that, on or about January 6, 2021, he/she had watched a portion of a livestream video on MARTIN's Facebook account, and recognized MARTIN in the video. Based on this video, W-2 believed that Martin was inside the U.S. Capitol Building during the riot. W-2 also provided me with a screenshot that he/she had found online, which he/she believed was a screenshot of the video he/she watched on MARTIN's Facebook account (*see* Image 3, below).

**Image 3**



Zac Martin

16.     The FBI also interviewed W-3, who indicated that he/she was familiar with what MARTIN looks like, having seen MARTIN in a neighboring community. W-3 indicated that he/she had seen a portion of a video livestreamed on Facebook, which he/she believed showed MARTIN in the U.S. Capitol Building during the riot. W-3 was shown Image 2 and agreed it appeared to be from the video he/she had seen.

8

17.     The FBI interviewed W-4, who indicated that he/she had met MARTIN in person and was friends with MARTIN on Facebook. W-4 told the FBI that he/she had spoken with MARTIN at a bar in Springfield, Missouri during the week leading up to January 6, 2021. During the conversation, MARTIN told W-4 that he was going to travel to Washington, D.C. W-4 told the FBI that he/she saw a livestream video on MARTIN's Facebook account showing MARTIN walking through the U.S. Capitol Building during the riot on January 6, 2021. W-4 was shown Image 2 and agreed it appeared to be from the video W-4 had seen on Facebook. W-4 was also shown Image 1 and confirmed that it matched MARTIN's Facebook profile, which W-4 believed had uploaded the video.

18.     The FBI interviewed W-5, who indicated that he/she had known MARTIN personally for several years. W-5 told the FBI that he/she saw a livestream video on Facebook showing MARTIN in the U.S. Capitol Building during the riot on January 6, 2021. W-5 also provided the TARGET PHONE NUMBER for MARTIN. I called the TARGET PHONE NUMBER on January 16, 2021, and the voicemail indicated that the owner of the number was "Zac."

19.     The FBI investigation to date indicates that MARTIN's Facebook account was likely closed after January 6, 2021. On or about January 13, 2021, an FBI employee accessed Facebook but was unable to find an active account belonging to MARTIN. However, the FBI employee observed and took screenshots of public conversations between other Facebook users discussing MARTIN and his livestream video. One of these conversations claimed to provide a link to the video. While the link was no longer active by the time the FBI attempted to access it, based on my training and experience, I recognized that it included a specific Facebook User Identification ("UID") number.

20.     Records from Facebook confirm that the above-referenced Facebook UID was registered using the vanity name "Zac Martin," was associated with the TARGET PHONE NUMBER, and was closed on or about January 10, 2021 at 01:46:48 UTC.

21.     On or about January 12, 2021, FBI personnel searched the Missouri Department of Revenue database for MARTIN's driver's license photograph. I believe the photograph viewed for MARTIN is of the same person shown in the screenshots provided by the witnesses.

22.     On or about January 17, 2021, I also conducted a Google Image search to attempt to identify the picture behind MARTIN in Images 2 and 3. This Google search revealed a photo attributed to the New York Times, which shows a painting of former New York Congresswoman Shirley Chisholm located inside the U.S. Capitol Building (*see* Image 4, below). The New York Times article, "Capitol Portraits, a Perk of Access, Become a Symbol of Excess Instead," from February 5, 2016, highlighted Image 4 as a painting inside the U.S. Capitol Building. This painting is consistent with the image behind MARTIN in Images 2 and 3.

**Image 4**



23.     Based on the foregoing, I submit that there is probable cause to believe that MARTIN violated 18 U.S.C. § 1752(a)(1) and (2), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; or attempts or conspires to do so. For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

24.     I submit there is also probable cause to believe that MARTIN violated 40 U.S.C. § 5104(e)(2)(D) and (G), which makes it a crime to willfully and knowingly (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress; and (G) parade, demonstrate, or picket in any of the Capitol Buildings.

25.     As MARTIN's above-referenced livestreamed Facebook video of himself in the U.S. Capitol Building was in all likelihood filmed with the TARGET PHONE, there is probable cause to believe that historical location information for the TARGET PHONE will provide evidence of the suspected crimes.

26.     Social media subscriber returns and search warrant results confirm the TARGET PHONE NUMBER as belonging to MARTIN.  Public records searches on MARTIN, specifically, as well as records obtained from the Missouri Department of Revenue, returned the same Rogersville address as MARTIN's current residence.  An attempt to interview MARTIN at that address revealed a vehicle parked there, registered to MARTIN. Attempts to interview MARTIN at that address as recent as January 22, 2021, and there was no indication MARTIN had returned to the residence.  As of the date of this affidavit, the FBI's office in Springfield, Missouri has been unable to locate MARTIN at his Rogersville address or any other logical addresses in the area.  The FBI interviewed W-6. He/she told the FBI that MARTIN had told W-6 that MARTIN was hiding from law enforcement and believed the FBI was looking for MARTIN. As such, there is probable cause to believe that prospective location information for the TARGET PHONE (i.e., for the next 30 days) will assist the FBI in locating and arresting MARTIN safely.

## BACKGROUND ON CELL-SITE DATA AND LOCATION INFORMATION

27.     In my training and experience, I have learned that PROVIDER is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or "cell tower/sector records."   E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  [Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and,

in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These

towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles

apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily

serve every call made to or from that device.  Accordingly, cell-site data is typically less precise

that E-911 Phase II data.

28.     Based on my training and experience, I know that PROVIDER can collect E-911

Phase II data about the location of the TARGET PHONE, including by initiating a signal to

determine the location of the TARGET PHONE on PROVIDER's network or with such other

reference points as may be reasonably available.

29.     Based on my training and experience, I know that PROVIDER can collect cell-

site data about the TARGET PHONE.  Based on my training and experience, I know that for

each communication a cellular device makes, its wireless service provider can typically

determine: (1) the date and time of the communication; (2) the telephone numbers involved, if

any; (3) the cell tower to which the customer connected at the beginning of the communication;

(4) the cell tower to which the customer connected at the end of the communication; and (5) the

duration of the communication.  I also know that wireless providers such as PROVIDER

typically collect and retain cell-site data pertaining to cellular devices to which they provide

service in their normal course of business in order to use this information for various business-

related purposes.

30.     Based on my training and experience, I know that Verizon Wireless also can

collect per-call measurement data, which Verizon Wireless also refers to as the "real-time tool"

("RTT").  RTT data estimates the approximate distance of the cellular device from a cellular

tower based upon the speed with which signals travel between the device and the tower.  This

information can be used to estimate an approximate location range that is more precise than typical cell-site data.

31.     Based on my training and experience, I know that each cellular device has one or more unique identifiers embedded inside it.  Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

32.     Based on my training and experience, I know that wireless providers such as PROVIDER typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service.  I also know that wireless providers such as PROVIDER typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business.  In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the TARGET PHONE's user or users.

## AUTHORIZATION REQUEST

33.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

34.     The proposed warrant will also function as a pen register order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and/or trap and trace device to record, decode, and/or capture certain information in Attachment A-1 for each communication to or from the TARGET PHONE, without geographic limit, for a period of thirty (30) days pursuant to 18 U.S.C. § 3123(c)(1).

35.     I further request that the Court direct PROVIDER to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.  I also request that the Court direct PROVIDER to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information unobtrusively and with a minimum of interference with PROVIDER's services, including by initiating a signal to determine the location of the TARGET PHONE on PROVIDER's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall reasonably compensate PROVIDER for reasonable expenses incurred in furnishing such facilities or assistance.

36.     Because the warrant will be served on PROVIDER, who will then compile the requested records at a time convenient to it, good cause exists under Rule 41 to permit the execution of the requested warrant at any time in the day or night.  Further, pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

15

## CONCLUSION

37.     I submit that this affidavit supports probable cause for a warrant to collect the

requested information about the location of the TARGET PHONE, as described in Attachment

A, and to seize the evidence described in Attachment B.

                                        Respectfully submitted,


                                        _____
                                        Isaac McPheeters
                                        Special Agent
                                        Federal Bureau of Investigation


Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on January 27, 2021

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE

---

**Attorney Certification Under 18 U.S.C. §§ 3121-3127**

To ensure technical compliance with 18 U.S.C. §§ 3121-3127, the warrant applied for herein
will also function as a pen register order.  I, an attorney for the Government, certify that the
information likely to be obtained is relevant to an ongoing criminal investigation being
conducted by the Federal Bureau of Investigation.  *See* 18 U.S.C. §§ 3122(b), 3123(b).

                                        __/s/ Brenda  Johnson_____
                                        Brenda Johnson
                                        Assistant United States Attorney
                                        District of Columbia